**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| Commodity Futures Trading Commission, *et al.*,<br><br>Plaintiffs-Appellees,<br><br>v.<br><br>Jackie Johnson, *et al.*,<br><br>Defendants-Appellants. | No. 26-4281<br><br>**DEFENDANTS-APPELLANTS' REPLY TO FEDERAL PLAINTIFFS' RESPONSE TO MOTION FOR SUMMARY DISPOSITION** |

Arizona remains enjoined from enforcing its own laws, on a legal theory this Court has rejected. That calls for vacatur, and the parties agree that, under Circuit Rule 3-6, this Court "may summarily vacate the preliminary injunction as to sports event contracts and remand for further proceedings as to other event contracts." Federal Plaintiffs' Response (Dkt. No. 29.1) ("Resp.") (Sept. 24, 2026) at 5. All that remains for this Court to decide is *when* to vacate and remand.

The Court should not reward the "morass" (Resp. at 4) created by the procedural moves of Plaintiffs-Appellees the United States of America and the Commodity Futures Trading Commission (CFTC) (the United States and CFTC together, Federal Plaintiffs); Plaintiff KalshiEX, LLC (Kalshi); and Intervenor Plaintiff North American Derivatives Exchange, Inc., d/b/a Crypto.com | Derivatives

North America (Crypto.com).[1] This Court should not allow the moves by each of those parties—in isolation or through their interplay—to further delay Arizona from enforcing its laws as to CFTC-registered designated contract markets (DCMs) like Kalshi, consistent with the law of this Circuit established in *KalshiEX, LLC v. Assad, et al.*, No. 25-7516 ("*Assad*"). Instead, it should act as soon as practicable. Of course, the Court may wish to wait and decide this motion after it disposes of the pending petition for rehearing in *Assad*. But that is as long as it should wait.

Federal Plaintiffs assert two reasons the Court should wait longer and leave in place the unsupported injunction. ***First***, the Federal Plaintiffs informed the Court and Defendants-Appellants that they expect the CFTC's revised Rule 40.11 (17 C.F.R. § 40.11) to be final in the next two months. Resp. at 2. Federal Plaintiffs imply that revision could impact the ruling in *Assad*. *Id.* After Federal Plaintiffs filed their Response to this motion, Kalshi informed the *Assad* panel of the CFTC's predicted timing for a revised Rule 40.11, saying what the Federal Plaintiffs did not:

[1] Contrary to Federal Plaintiffs' suggestion (Resp. at 3), Defendants-Appellees did not agree to a stay of proceedings in this matter pending issuance of mandates in *Assad* and the two companion cases. Federal Plaintiffs are correct that in Kalshi's appeal of the case it brought against the Arizona Attorney General and others seeking to enjoin Arizona gaming law, the Court ordered "[p]roceedings in [that] appeal . . . stayed pending issuance of the *mandates*." *KalshiEx, LLC, et al. v. Johnson, et al.*, No. 26-2978 ("*Kalshi*"), Dkt. No. 23.1 (9th Cir. June 4, 2026) (emphasis added). But in light of *Assad*, the district court's denial of the preliminary injunction in *Kalshi* should be affirmed, so there is no rush to lift the stay; whereas in this case, the preliminary injunction is now contrary to the law of the Circuit. Thus, whether or not *Kalshi* remains stayed should have no impact on this motion.

that the Court should wait to decide Kalshi's petition for rehearing until after the revised Rule 40.11 is final.[2] Appellant Kalshi's Status Report at 1, *Assad* (Sept. 25, 2026), Dkt. No. 224.1. ***Second***, the companion cases to *Assad* are under further appellate review,[3] and the mandates could be stayed pending resolution of those petitions for writs of certiorari. If Kalshi's pending petition for rehearing is denied, it could file a petition for a writ of certiorari, too.

But neither of these points changes the fact that *Assad* is now the law of this Circuit. And the preliminary injunction in this case rests on holdings that are contrary to *Assad* (that sports event contracts are likely swaps and that the CEA likely preempts enforcement of Arizona gaming laws against DCMs offering sports event contracts). There is currently no legal basis for this injunction, so it must be vacated. And without undue delay, because Arizona is injured every day that it remains unlawfully enjoined from enforcing its laws.

---

[2] Even two months before it is published, Kalshi suggests it knows what the final rule will say: "The CFTC's imminent promulgation of a regulation that would negate one of the panel's principal grounds for ruling against Kalshi counsels in favor of rehearing this case en banc." *Assad,* Dkt. No. 224.1 at 2.

[3] Petition for a Writ of Certiorari, *Robinhood Derivatives, LLC v. Dreitzer*, No. 26-338 (U.S. Sept. 10, 2026); Petition for a Writ of Certiorari, *North American Derivatives Exchange, Inc., dba Crypto.com v. Nevada*, No. 26-344 (U.S. Sept. 11, 2026). Nevada's responses are due October 14 and 15, respectively. *See* Docket, *Robinhood Derivatives, LLC v. Dreitzer*, No. 26-338 (U.S. Sept. 10, 2026); Docket, *North American Derivatives Exchange, Inc. v. Nevada*, No. 26-344 (U.S. Sept. 11, 2026).

## I. A revised Rule 40.11 would not alter the *Assad* decision, and this Court need not wait for that revision to decide this motion.

The *Assad* decision did not depend on Rule 40.11. The Court interpreted the Commodity Exchange Act (CEA) and found that sports event contracts likely are not "swaps" and the underlying sports outcomes likely do not qualify as excluded commodities. *KalshiEX, LLC v. Assad, et al.*, No. 25-7516, --- F.4th ----, 2026 WL 2543846, at *8–12, *15 (9th Cir. Aug. 28, 2026). The panel separately and independently rejected Kalshi's contention that the Special Rule, 7 U.S.C. § 7a-2(c), and its associated regulation, Rule 40.11, prove that the CFTC has exclusive jurisdiction over sports event contracts traded on DCMs. *Id.* at *12–14 & n.6. And, as the *Assad* panel observed, the CFTC's interpretation of the statute through rulemaking would not trump the Court's interpretation. *Id.* at *13–14 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 385, 401 (2024)).[4]

[4] Two weeks ago, a separate three-judge panel decided *Blue Lake Rancheria v. Kalshi, Inc.*, No. 25-7504, --- F.4th ----, 2026 WL 2728466 (9th Cir. Sept. 16, 2026) ("*Blue Lake*"). Last week, the United States Court of Appeals for the Sixth Circuit issued a consolidated opinion in *KalshiEX LLC v. Schuler, et al.* and *KalshiEX LLC v. Orgel, et al.* *KalshiEX LLC v. Schuler*, No. 26-3196, --- F.4th ----, 2026 WL 2884087 (6th Cir. Sept. 25, 2026) ("*Schuler*"). Both agreed with the *Assad* panel that Kalshi's sports event contracts are likely not swaps under the CEA. *See Blue Lake*, 2026 WL 2728466, at *13; *Schuler*, 2026 WL 2884087, at *15. Neither *Blue Lake* nor *Schuler* depended on Rule 40.11 to reach that conclusion. *Schuler* found the Special Rule to operate as a supplement to state law, "suggest[ing] that the CFTC may consider not only federal but also state law vis-à-vis the legality of a DCM's conduct." 2026 WL 2884087, at *25–27. Notably, *Blue Lake* reversed denial of preliminary relief to plaintiff tribes, and *Schuler* vacated the preliminary injunction granted to Kalshi. These decisions demonstrate that Rule 40.11 is irrelevant to the

In any event, the Court and Arizona should not be at the mercy of the CFTC's rulemaking vicissitudes. First, the CFTC "*expects* that its revised version of 17 C.F.R. § 40.11 will become final within the next two months." Resp. at 2 (emphasis added). It cannot say for sure—maybe it will take even longer. Second, whenever revised Rule 40.11 is issued, Defendants-Appellants expect that final rule to be challenged in court, putting its finality in question. Third, if and when that happens, Federal Plaintiffs and Kalshi will no doubt offer that litigation as a reason for further delaying issuance of the mandate in *Assad*—and for putting off this motion even further. There is no legal basis for Arizona to remain under an unlawful injunction during that time.

## II. This Court should not wait for petitions for writs of certiorari to be decided before deciding this motion.

If the Court denies Kalshi's petition for rehearing in *Assad*, it should promptly grant this motion. The Court should not wait for decisions on the petitions for writs of certiorari in the companion cases, *Robinhood Derivatives, LLC v. Dreitzer*, No. 26-338 (U.S. Sept. 10, 2026), and *North American Derivatives Exchange, Inc. v. Nevada*, No. 26-344 (U.S. Sept. 11, 2026), or in the New Jersey case, *Mary Jo Flaherty, et al. v. KalshiEX, LLC* (U.S. Sept. 8, 2026). Certiorari proceedings can take a while, and in the meantime, Arizona should not be subject to an injunction

---

statutory conclusion that sports event contracts are likely not swaps and the CEA likely does not preempt state gambling laws as to sports event contracts.

that everyone agrees is contrary to the law of the Circuit. Indeed, Federal Plaintiffs offer no legal basis for why the injunction should remain in effect pending petitions for writs of certiorari in other cases. *See Deocampo v. Barr*, 766 Fed. Appx. 555 (9th Cir. 2019) (unpublished) (court did not wait to decide Circuit Rule 3-6 motion while certiorari remained possible in the intervening case on which summary disposition would be based).

With the preliminary injunction in place, Kalshi and other DCMs are currently free to operate outside the bounds of Arizona law—allowing individuals under 21 years old to gamble, offering illegal bets on elections,[5] and avoiding privilege fees and other requirements that come along with being licensed to offer event wagers in the State. DCMs inflict costs and damages on Arizona, the 22 Tribes whose sovereign nations lie within Arizona, and all Arizona residents—particularly those residents most vulnerable to harm, including those who are underage as well as individuals with gambling addiction.

---

[5] Federal Plaintiffs on the one hand say that the Court should "remand for further proceedings as to other [non-sports] event contracts," but that the Court should *not* remand for further proceedings on whether election contracts or other political event contracts "fit within the CEA's definition of swap." Resp. at 5 & n.2. But it is not clear how the Court could do one but not the other. The court below did find election contracts "work the same way" as other swaps. *KalshiEX LLC v. Johnson*, 832 F. Supp. 3d 954, 962 (D. Ariz. 2026). But, at a minimum, the district court must reevaluate that holding (and consider the other non-electoral political outcome contract at issue in the criminal information) through the lens of *Assad*.

A preliminary injunction is extraordinary relief. *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012). It requires a showing of a likelihood of success on the merits, irreparable harm, and that the equities and public interest favor relief. *Id.* Plaintiffs can show none of those here.

First, the only appellate authority in this Circuit directly rebuts Plaintiffs' theory, so Plaintiffs lack a likelihood of success on the merits. Plaintiffs do not, and cannot, dispute that, if they had moved for a preliminary injunction any time in the last month, the district court would have denied it. *Hart v. Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) (three-judge panel decision binds all later panels and all district courts within the Ninth Circuit unless and until it is overruled by the en banc court, or unless an intervening decision of the Supreme Court is clearly irreconcilable with the panel's reasoning).

Second, the Federal Plaintiffs will not be irreparably harmed if Arizona is allowed to enforce state laws related to gambling, which under *Assad* are not preempted.

Third, the equities do not favor enjoining enforcement of Arizona gaming laws when binding precedent says those laws are not preempted. The State "suffers a form of irreparable injury" "[a]ny time" it is "enjoined by a court from effectuating statutes enacted by representatives of its people." *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 148 F.4th 648, 656 (9th Cir. 2025) (quoting *Trump v. CASA, Inc.*,

606 U.S. 831, 860–61 (2025)). In *Maryland v. King*, 567 U.S. 1301 (2012), the Supreme Court stayed a lower-court injunction that would have prevented the state from undertaking certain criminal investigative efforts because such an injunction would inflict ongoing harm to "law enforcement and public safety interests." *Id.* at 1303.

Arizona and its officials suffer ongoing, irreparable injury from not being able to file or advance any civil or criminal actions against DCMs offering event contracts illegally under Arizona law. The equities and public interest compel this Court to apply *Assad*, vacate the preliminary injunction, and permit the State to enforce its laws. *See N.D. v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1113 (9th Cir. 2010) ("[I]t is obvious that compliance with the law is in the public interest.").

* * *

*Assad* is now the law in this Circuit. Even if Kalshi is seeking further review, it must abide by *Assad* in the interim. Once it becomes clear this Court will not reconsider *Assad*, it should grant this motion. To do otherwise would unjustly delay enforcement of Arizona law and do further injury to Arizona, the 22 Tribes whose sovereign nations lie within Arizona, and all Arizona residents.

RESPECTFULLY SUBMITTED this 1st day of October, 2026.

**KRISTIN K. MAYES**
**ATTORNEY GENERAL**

By /s/ William Y. Durbin
Joshua D. Bendor
Alexander W. Samuels
William Y. Durbin
Joshua A. Katz
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

I certify that this motion complies with Federal Rule of Appellate Procedure 27(d)(2)(A) and Circuit Rule 32-2(b) because it contains 2,119 words, excluding the items exempted by Federal Rules of Appellate Procedure 27(a)(2)(B) and 32(f).

This motion complies with the typeface and typestyle requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because this motion has been prepared in a proportionally spaced typeface using Microsoft Office 365 in 14-point Times New Roman font.

October 1, 2026 *<u>/s/ William Y. Durbin</u>*

William Y. Durbin

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using ACMS on October 1, 2026.

I certify that all participants in the case are registered ACMS users and that service will be accomplished by ACMS.

October 1, 2026

*/s/ William Y. Durbin*
William Y. Durbin